IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

Estate of SUSAN VAUGHAN,
WESLEY VAUGHAN, Husband and
WESLEY VAUGHAN on behalf of
ELIZABETH CAMPBELL,
EMILY CAMPBELL, and THOMAS
CAMPBELL, Minor Children                                                              PLAINTIFFS

v.                                                                    CIVIL ACTION NO. 3:05cv0038-DPJ-JCS

KIA MOTORS CORPORATION and KIA
MOTORS AMERICA, INC.                                                                  DEFENDANTS

ORDER

Before the Court is Plaintiffs' Motion in Limine Regarding a Variety of Topics.  The Court, having fully considered the submissions of the parties and the appropriate authorities, will address Plaintiffs' issues numbered as they are in Plaintiffs' Motion:

1.      Verbal Warnings to Susan Vaughan to Wear Seatbelt:

Approximately three weeks before this accident, Officer Buddy Wayne Pitts apparently observed Vaughan driving her vehicle in an erratic manner, pulled her over, and gave her a warning that included a warning to wear her seatbelt.  Plaintiffs move to exclude under Rule 404(b) of the Federal Rules of Evidence and state that the evidence fails to satisfy Rule 406.

To admit evidence under Rule 404(b), extrinsic evidence must satisfy two criteria:  1) it must be relevant under Federal Rule of Evidence 401 to an issue other than the defendant's character; and 2) it must satisfy Federal Rule of Evidence 403.

Defendants claim that this evidence is admissible under Rule 404(b) not to show Ms. Vaughan's character but to show that "no mistake or accident occurred.  Specifically, the seat

1

belt did not accidentally come unlatched during the crash because, as Officer Pitts' testimony indicates, it was not latched in the first place." It is apparent that the basis of Defendants' argument is that Ms. Vaughan acted in conformity with her prior conduct. This propensity evidence should most appropriately be viewed in terms of Rule 406, which allows proof of habit to establish that the person acted in conformity with that habit. The problem for Defendants is that one incident does not establish habit.

Having failed to meet Rule 406, Defendants give the "other purposes" exception found in Rule 404(b) an interesting twist, arguing that Ms. Vaughan's prior act and conforming conduct prove the latch did not "accidentally come unlatched." The true focus of this evidence, even as argued by Defendants, remains on Ms. Vaughan's alleged propensity to drive without her seatbelt. If such propensity evidence is not aimed at some general character related to her driving, then it is aimed at habit. Either way, the evidence would be inadmissible. Moreover, the evidence fails to satisfy the exceptions to Rule 404(b).

In *Jones v. Southern Pacific Railroad,* 962 F.2d 447, 449 (5th Cir. 1992), the Fifth Circuit Court of Appeals affirmed the exclusion of an actor's prior safety infractions and held:

> Rule 404(b) of the Federal Rules of Evidence says that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. The reason for the rule is that such character evidence is of slight probative value and tends to distract the trier of fact from the main question of what actually happened on a particular occasion.

(citing *Moorhead v. Mitsubishi Aircraft Int'l, Inc.,* 828 F.2d 278, 287 (5th Cir. 1987) (pilot's training records not admissible to show that he was negligent in crashing plane); *American Airlines, Inc. v. United States,* 418 F.2d 180, 197 (5th Cir. 1969) ("[E]vidence of a similar act of negligence is not admissible to prove negligence in the performance of the same act later.")); *see*

*also Connelly v. Hyundai Motor Co.*, 351 F.3d 535, 546 -547 (1st Cir. 2003) (evidence of two prior citations for driving without seatbelt not admissible under Rule 404(b) to prove absence of seatbelt on day of accident).

In this case, the Court finds that the exceptions listed in Rule 404(b) do not apply, and even if the proof might somehow speak to an issue other than conforming conduct, the jury would likely consider the evidence for the very purpose Defendants state in their response--to prove that Ms. Vaughan did not wear a seatbelt on the day of the accident. As such, the evidence would be subject to Rule 403. Plaintiffs' motion is granted.

2. <u>Statements From Thomas Campbell at Accident Scene</u>:

Plaintiffs argue that the accident scene statement by Thomas Campbell, then four years old, that his mother was not wearing a seatbelt should be excluded as hearsay and under Rule 403. They further argue that the Court should determine Campbell's competence before allowing the statements. Finally, in their reply, Plaintiffs state that Defendants should be forced to lay a proper foundation before offering such evidence.

There appears to be no dispute to the foundational fact that the statement was made at the accident scene shortly after the accident and at a time when Campbell was still under the stress of the event. Defendants argue that the statements are therefore admissible as present sense impressions under Rule 803(1). While the Court has considered Defendants' authority, it appears that some of those cases generally track Rule 803(2) addressing admissibility of "excited utterances." Either exception would allow admission of these comments into evidence as the policy supporting the rules finds reliability in statements where there is no time for fabrication.

Plaintiffs argue that even if a hearsay exception applies, the Court should first determine whether Campbell was competent to be questioned regarding the incidents surrounding the

3

accident. They explain more fully in their reply that the Court must determine whether Campbell understood the questions, understood what it meant to wear a belt, understood that the officer was directing the question to him, and understood that the officer was asking whether the belts were used at the time of the accident or as his mother was laying in the road.

As an initial matter, Campbell is not expected to testify, and this motion relates to his out-of-court statements and not his competence to testify at trial. Nevertheless, to the extent the Court would need to make a competence determination, the portions of the officer's deposition transcript that Defendants provided to the Court address Plaintiffs' issues. The officer testified that the child told him that he was wearing a seatbelt but that his mother was not. This answers several questions. First, the statement indicates that the child understood that the question was directed to him. Second, he appreciated the difference between wearing a belt and not wearing a belt. Third, the statement was made while the child was unbelted, indicating that he understood the context of the question (i.e., the question related to the use of belts before the accident, not after).

Finally, that Campbell was young does not render the subject hearsay exceptions any less applicable. In fact, the Fifth Circuit Court of Appeals has noted in another context that just the opposite maybe true. In *United States v. Hefferon,* 314 F.3d 211, 222-23 (5th Cir. 2002), the court observed:

> Several courts of appeals have lowered the evidentiary bar to the admission of like-related evidence when the victim declarant is a young child, recognizing that the possibility of fabrication and coaching are limited and the likelihood that the trauma from the startling event will remain with the child for some time after the encounter is strong. *See, e.g., United States v. Rivera,* 43 F.3d 1291, 1296 (9th Cir. 1995) (statement made a half hour after an assault occurred qualified as an excited utterance because "[r]ather than focusing solely on the time a statement was made, we consider other factors, including the age of the declarant, the characteristics of the event and the subject matter of the statements"); *United*

> *States v. Farley,* 992 F.2d 1122, 1123 (10th Cir. 1993) (statement of a young child made the day following molestation could have been admitted as an excited utterance where the child was described as frightened and on the verge of tears); *Morgan v. Foretich,* 846 F.2d 941, 947 (4th Cir. 1988) (four-year-old's statements made within three hours of returning from sexually abusive father's home fell within exception because "courts must also be cognizant of the child's first real opportunity to report the incident"); *United States v. Iron Shell,* 633 F.2d 77, 85-86 (8th Cir. 1980) (nine-year-old's statements elicited by a police officer between forty-five minutes and one hour and fifteen minutes after an assault fell within the excited utterance exception); *United States v. Nick,* 604 F.2d 1199, 1202 (9th Cir. 1979) (three-year-old's statements within hours of molestation were admissible).

While these cases deal with the trauma of an assault, the underlying policy is no less applicable in this case. His age may affect the weight of the evidence, but it does not render the evidence inadmissible. Finally, the Court finds that the statements go to the heart of Defendants' case and the probative value is not substantially outweighed by prejudicial effect. Plaintiffs' motion is denied.

      3.      <u>Comments Regarding Failure of Children to Testify</u>:

Plaintiffs do not intended to call certain wrongful death beneficiaries to testify at trial and seek exclusion of any reference to their absence. Defendants oppose the motion, arguing that Plaintiffs have the burden of proof on damages. Neither party cites any authority to support their arguments.

This motion seems to implicate the so called un-called witness rule, which was found to be "archaic" but still applicable in *Herbert v. Wal-Mart Stores, Inc.*, 911 F.2d 1044, 1046 (5th Cir. 1990). According to the Fifth Circuit Court of Appeals, which has not revisited this issue, "[t]he rule is that, if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Id*. (citing *Graves v. United States,* 150 U.S. 118, 121, 14 S. Ct. 40, 41, 37 L. Ed. 1021 (1893)). The court noted that "if unconstrained

by precedent, we would hold that in trials conducted under the Federal Rules of Evidence and the Federal Rules of Civil Procedure, the trier of fact may draw no inference from a party's mere failure to call a witness who is susceptible to subpoena by either party, and that it is inappropriate for counsel to argue to the fact finder that such an inference is permissible." *Herbert*, 911 F. 2d at 1048.  Although finding that it was constrained by precedent and that the rule still applied, the court held that the witness was not "peculiarly within [the] power" of the adverse party in that case.  *Id*. at 1049.

In this case, the un-called witnesses are wrongful death beneficiaries Elizabeth Campbell, Emily Campbell, and Thomas Campbell, the oldest of which is 14 years old.  Defendants do not rebut Plaintiffs' assertion that they made no effort to depose these children; that Michael Campbell does not wish to have his daughters testify regarding the death of their mother; or that Thomas Campbell is now beyond the subpoena power of the court living with his biological father.  However, these children are plaintiffs (even if represented by adults) and are entitled to damages under Mississippi Code Ann. Section 11-7-13.  Their testimony would be significant with respect to their claimed damages.  The Court is sympathetic to Mr. Campbell's wishes, but it is constrained by *Herbert* and finds that Defendants should be allowed to comment on the lack of evidence regarding these children's damage claims.  Plaintiffs' motion is denied.

      4.      <u>Evidence Regarding the Cause of the Initial Crash</u>:

Plaintiffs argue that evidence of the initial cause of the accident should be precluded because this is an enhanced injury case.  As an initial matter, it will be impossible to prevent the jury from hearing how the roll began.  Plaintiffs' own experts discuss these facts when describing the kinematics of the accident.  That said, there is some non-binding authority for Plaintiffs' position, and it is somewhat debatable whether the Mississippi Supreme Court has

6

directly answered this question.  However, if Mississippi has not directly decided whether evidence of a plaintiff's negligence in causing the initial accident is admissible, then it has at least tipped its hand.

In *Estate of Hunter v. General Motors Corp.*, 729 So. 2d 1264, 1271 (Miss. 1999), the court noted that there are two issues regarding such evidence.  The first, and the only one relevant to this case, is "[w]hether comparative negligence principles should apply in crashworthiness cases at all, *i.e.*, should the jury be permitted to consider the fault of parties whose negligence caused the accident in the same formula in which the jury considers the liability of the crashworthiness defendant?" *Id.*  The court noted that some jurisdictions do not allow evidence of comparative fault in causing the accident, but observed that this "represents the clear minority view" and that "the modern trend rejects this piecemeal approach, focusing the inquiry on the product design as an integrated whole and considering all the factors which contribute to the event which causes the injury." *Id.*  However, the court then elected to address the issue in the context of the apportionment issue under Mississippi Code Section 85-5-7 and allowed evidence of the plaintiff's fault in causing the accident.  The net effect is that the court did not "piecemeal" the claims.  The only two justices who voted against the majority opinion no longer serve on the court, and if *Estate of Hunter* does not settle the issue outright, it offers strong evidence from which this Court can venture an *Erie* guess that the Mississippi Supreme Court would allow evidence of the cause of the initial accident.  Plaintiffs' Motion is denied.

     5.     <u>Expert Testimony from Lay Witnesses</u>:

Plaintiffs seek to exclude expert testimony from the two medical examiners who responded to the accident scene.  As an initial matter, it appears from Plaintiffs' motion and reply that there is no dispute that these witnesses will be allowed to offer testimony of the sort

allowed by Rule 701 based on their observations of the accident scene. However, having read these witnesses' deposition transcripts in their entirety, it does not appear that they have formed a proper basis to offer expert testimony under Rule 702. However, the Court needs to know the full context of the proffered testimony before finally ruling. Therefore, Plaintiffs' motion is granted until such time as Defendants' offer a proffer of any expert testimony outside the presence of the jury.

      6.      <u>Refusal of Autopsy</u>:

Plaintiffs move to exclude evidence of <u>the refusal</u> to allow a requested autopsy as irrelevant and prejudicial; their motion does not appear to seek exclusion of the fact that no autopsy was performed. Nevertheless, Defendants' memorandum focuses entirely on the need to inform the jury of the absence of an autopsy, and articulates no basis for excluding the reason the autopsy was not performed (i.e., the refusal). The absence of an autopsy will not necessarily suggest to the jury that one was refused. Plaintiffs' motion is therefore granted with respect to the refusal, and denied to the extent it could be interpreted as seeking to exclude the absence of an autopsy altogether.

      7.      <u>Lack of Response to Recall</u>:

The Court will address this issue in conjunction with its separate ruling on the Defendants' motion to exclude evidence of recalls.

      8.      <u>Circumstances Surrounding Thomas Campbell's Birth</u>:

Thomas Campbell's biological father was not Ms. Vaughan's husband at the time of conception. Defendants claim that this is somehow relevant to loss of association, society, and companionship. While Defendants have a clear right to examine the nature of the relationship

between mother and son at the time of this accident, the minimal probative value of establishing paternity is substantially outweighed by the risk of prejudice.  Plaintiffs' Motion is granted.

9. Subject Number 9 is now moot based on prior rulings of the Court.

10. Subject Number 10 is now moot based on prior rulings of the Court.

11. <u>Comments Equating Defendants' Corporate Entities with Employees</u>:

Plaintiffs assert that defense counsel should not be allowed to state that they are representing "'the men and women of Kia Motors' or some variant thereof."  They claim that these men and women are not defendants and the statement is therefore prejudicial and confusing.  Defendants observe that standard jury instructions inform the jury that corporations may act only through natural persons, which is of course correct.  Neither party cites any authority on this issue.  That Kia is made up of, and acts through, men and women is a fact that the jury will readily recognize and understand, and in a broader sense, defense counsel will be defending the acts or omissions of these individuals.  The Court denies Plaintiffs' motion.

12. <u>Evidence of Vehicles Driven by Plaintiff or Witnesses</u>:

Plaintiffs argue that Defendants should not be allowed to introduce evidence that their witnesses drive vehicles manufactured by the Defendants and thereby vouch for their safety.  Such evidence, they say, would lack probative value and run afoul of Rule 403.  So too, Plaintiffs argue that no evidence of their vehicles should be allowed into evidence.  Defendants respond that the motion fails to identify the witnesses at issue; some experts may base opinions in part on personal experience with the Kia Sportage; and Plaintiffs' own expert (Batzer) wants to testify regarding the safety of the vehicle he drives.  Neither party cites authority for their positions.

As an initial matter, the Court granted Defendants' motion to strike Batzer, so his testimony is no longer consequential. However, as the Defendants note, the motion does not specify which witnesses may be in issue, and the Court can foresee potential probative value especially with respect to expert witnesses who base their opinions in part on experience with the subject buckle (assuming that has occurred). The record simply is insufficient at this stage to know whether or not the evidence is admissible. However, to avoid the prejudice that might occur should Defendants fail to establish a proper foundation for this evidence, the Court will grant Plaintiffs' motion and allow the Defendants to reassert their position based on specific witnesses outside the presence of the jury.

13. <u>FMVSS 209 Certification and Compliance with FMVSS 209</u>:

Plaintiffs' reply summarizes their argument: "[A]ny self certification the D's undertook does not establish that the buckle contained in the subject vehicle complied with FMVSS 209." They further argue that since the subject buckle could unlatch with more than 5 pounds of force, it fails to satisfy FMVSS 209. Plaintiffs' position essentially raises a question of fact, asking the Court to accept as true their version of the case while rejecting Defendants' evidence to the contrary. Plaintiffs' motion is denied.

14. <u>Videos, Tests, Simulations, or Animations</u>:

The Court can conceive of evidence that falls within the description in Plaintiffs' motion that would be admissible (at least for some purposes). Moreover, the Court has not seen the objected to evidence and has not heard the Defendants' foundation and purpose for offering the evidence. Accordingly, Plaintiffs' motion is premature and is denied. However, Defendants should not present such evidence to the jury without first laying a proper foundation. Plaintiffs may reassert their position at that point.

**SO ORDERED AND ADJUDGED** this the 17th day of January, 2007.

s/ <u>*Daniel P. Jordan III*</u>
UNITED STATES DISTRICT JUDGE